2003 HOWLETT v. Department of Veterans Affairs Mr. Walsh, good morning. If it please the court, thank you for bringing this case on to be heard. It's a very interesting case. When Mr. Howlett contacted me and described what was going on, I thought that it would be easily resolved and we'd probably get a quick remand from the court below. Well, unfortunately, the court rather excoriated me and didn't like my approach to the brief. Mr. Howlett suffers from hyperacusis, which is an enhanced form of tinnitus. And what happens is that even in a quiet environment like this, he might perceive me now as shouting. If somebody's got their radio turned on normally, it sounds like he's in a rock concert. And this happens intermittently. It's not a constant thing. Let me ask you, Mr. Walsh, I'm having a hard time seeing where the legal question is here. Well, the court in their decision on page 1 truncated all argument. In other words, they said the board made a credibility determination and therefore all of Mr. Howlett's peer-reviewed medical literature, all of his expert opinions, nine or ten years of longitudinal medical care, which all was favorable to him, that the board can truncate their review, that our standard in 7104B, and that's what I briefed below, that's what I briefed to the court below, was I didn't talk about credibility. I said credibility shouldn't even be an issue here. We've got all this objective medical evidence. All of his injuries are documented in the military medical records. So why are we disputing? Originally, his claims were denied the well-grounded thing, and then they were remanded back by the board. And ultimately now, at this point, he's prevailed on every one of his issues except the depression. The depression and anxiety that flow from this terrible noise in his head and these hearing problems. Dr. Kelly at the VA worked with him for nine years through medication, through therapy. She reduced his alcohol consumption. She preserved his life. But these are all questions of fact. Right, they are. They're all based on evaluation of facts or the application of law to fact and the assessment of credibility of the record as a whole. Well, but they weren't. It seems to be that the credibility here was personal to Mr. Howlett, and in a non-adversarial system. But it was determined that based upon that evidence and based upon those credibility determinations that there was no need to look further. Right. How are we to, on what basis do we have jurisdiction to overturn that? Well, because this court has said and Congress has said that these cases will be determined on all the record, on the record in its entirety. And also that when a case arrives at equipoise, you know, then the veteran will prevail. And this is purely adversarial here. I mean, you've got a psychologist making an inhominem attack and basically calling the veteran a drunk. When you've got nine years of a board-certified VA psychiatrist who is taking care of him, the court talks about the fact that, as counsel does in her brief, that he lost his Social Security case. He did. But they never mention that he went back and prevailed a few years later. That's at 92 in the record. So upon further evidence and further review, the Social Security Administration awarded him benefits. And the only – he's gone back and he's been granted his TMJ, his temporal mandibular joint disorder. He's been granted tinnitus now. All the things that have been previously denied on this credibility determination turn out when we look at it a second look, the VA, the regional office, has changed its position. And he's prevailed on all these things, which raises the – more than raises an inference that these credibility determinations weren't viable. But my point here is, are we going to eviscerate 7104? Are we going to change the rules for veterans? This is – one of the things that happens in Social Security is that they do make credibility determinations, and they're often problematic for claimants. But that's the last item in a decision. That decision has taken – gone through the five-step process and evaluated all the evidence and all the procedural matters, and everything's been ventilated. And then the last issue that's talked about is credibility. Here, it's a get-out-of-jail-free card for the board. They say, well, credibility – and we don't have to talk about anything else. We're done. And I don't think that serves our veterans very well. It certainly doesn't comport with 7104D, and it seems to me that the precedence of this court. Credibility, sure, it's an issue. A lot of my clients are schizophrenics. One of them will tell you that he's Ra, the sun god. So how do you assess his credibility? Is he making it up, or does he really honestly believe this? And if you – I guess if you didn't believe in schizophrenia and what will happen when a schizophrenic is off the – So what are you doing? Are you asking us to reevaluate the credibility determinations of the board? Are you asking us to vacate them and tell them to go back and do it over and make other credibility determinations? What exactly are you seeking? No, I'm saying that credibility should have never even got into the debate here because there's subjective medical and scientific evidence that supports this man's position. A credibility – you know, this isn't an adversarial procedure. So there's no direct and cross-examination. There's no depositions taken. I would have been happy to depose that psychologist. He rebutted the unfavorable ear disease. He never made an ear disease claim. So the doctor says, oh, you don't have an ear disease. Well, that's true because he never claimed that he did because tinnitus is not an ear disease. He doesn't have a perforated eardrum. He doesn't have an infection in his ear. His ears look normal. She said, well, he has no hearing loss. He doesn't. And 10% of people with this phantom noise, like I have, don't have hearing loss. And when the fine – the expert, the VA's nationally – internationally recognized expert from the VA in Portland weighed in and said 10% of – sent him an email and said 10% of people with tinnitus and hyperacusis don't have any objective hearing loss. That should have been the end of it. There's a daubered issue here. I mean, we've got people that just don't understand the science and they're allowed – these VA examiners are just allowed apparently to say anything they want in a C&P report. Often no one sees those C&P reports in these cases until the record before the agency is issued. So that's a procedural due process issue. That's a big problem. But here's the case where Mr. Howlett had furnished some rebuttal evidence from the VA's own expert and yet a credibility – sort of an offhanded credibility issue. Well, Dr. Kelly never raised a credibility issue. In fact, she signed the residual functional capacity evaluation, which the court below was critical of. She just signed a piece of paper. The mental residual functional capacity evaluation is a sworn document, which is her as a medical professional is giving to the state of Pennsylvania, saying this is my assessment as the treating physician for this individual of his or her limitations. It's the cornerstone. It's the anchor of the Social Security system. They have a physical and a mental RFC. And so it's not just a little piece of paper. And because of that, he was awarded his benefits on his second trial. And I was just a little taken aback by the court saying, well, they don't have to look at the rest of the evidence. We don't have to look at the objective medical evidence or the history because we've made a credibility determination. This is not a jury trial. I've sat in that jury box and had to make those decisions. There was no cross-examination. This is non-adversarial, and I think credibility is important, and I think certainly the BVA, certainly the examiners, certainly decision review officers who are having personal contact with veterans and their families should be on guard for false claims. But here you're arguing here before us that, well, there was a problem because the board didn't look at all of this evidence that was relevant, important, significant to your client's claim. Instead, they just made credibility determinations, and that's not right. Well, no. They're allowed to make credibility determinations. There was apparently a hearing on the record. There's several transcripts in the record, so they're allowed to do that. All I'm saying is that in veterans' disability law, in this forum, that that should be used with great discretion and be very circumspect, and for the court to then say, well, we're not going to look at the 7104 issues, we're not going to look at the other failings in this decision, but because they made a credibility determination, they get a pass on all the other jurisprudence of this court and the court below, I don't think we want to give one individual that kind of power. We're placing that matter beyond review, and it seems to me that in an ex parte, claimant-friendly sort of environment, that's not a good place to go. But again, you seem to be arguing that, well, there's a problem because the board never looked at all of this other evidence, and they just focused on these credibility determinations. But your brief doesn't tell us anywhere that I could see that all of this other evidence, what all of this other evidence is. Your brief seems to focus on all of these credibility determinations, page after page after page. It seems to me that, again, all you're trying to do is re-argue the facts of the case and the determinations that were made, which you know is not within our jurisdiction. I would certainly not have wasted the court's time, nor Mr. Howlett's, if I did not feel that this problem rises to the level of a due process issue, and I think that's what he failed to have here, because he was entitled to an award for his depression based on the facts that were before the board, based on the evidence, and based on the law. Now, to allow them then to circumvent all of that with this fanciful credibility determination seems to be that we're into the realm of due process here, rather than a weighing of the facts. I think the facts are so outrageously favorable to this man, and again, the agency must feel so too, because with the exception of depression, all the other benefits have now been granted. All right. We'll reserve your rebuttal time. Let's hear from the government. Thank you. Ms. McNamara, good morning. Good morning. May it please the Court, the Court should dismiss Mr. Howlett's appeal because he fails to adequately raise a genuine issue that this Court possesses jurisdiction to consider. His arguments, as the Court noted, amount to little more than an attempt to re-argue the evidence that was argued before the board. These arguments concerning the board's factual findings, its credibility determinations, and its weighing of the evidence are not matters that are properly before this Court. As the Veterans Court noted, the core issue in this case was the veterans' credibility, and the board thoroughly reviewed the record, and determining that Mr. Howlett was not credible, it weighed the evidence accordingly. Contrary to Mr. Howlett's allegations, the board did not truncate its review of the evidence and the record as a whole. Is there anything to suggest that the board did not consider the entire record, even though the discussion was essentially focused on its credibility? No, Your Honor, there's nothing that suggests that, and indeed in Mr. Howlett's brief he identifies only three things that I could discern, and that was Dr. Kelly's evaluations, the treating psychologist, the 2006 Social Security determination, and the medical literature. However, the board specifically considered each of these three things. What Mr. Howlett is arguing about is the weight that the board assigned, and that's not a matter that's properly before this Court. Accordingly, Mr. Howlett's contentions that the board or the Veterans Court created a rule of law or violated due process by allowing the board to truncate its review of evidence is simply baseless, and Mr. Howlett cannot bring the board's credibility determination within this Court's jurisdiction by mischaracterizing what the board did. In the same vein, Mr. Howlett's contention that the credibility determination itself violates due process is wholly without merit. The board is charged with making findings of fact, and determinations of probative value and credibility are necessary and inherit components in that responsibility. Again, Mr. Howlett is simply trying to bring the board's credibility determination within this Court's jurisdiction by labeling it constitutional, presenting it constitutional, but it is constitutional in name only, and it doesn't violate due process, nor is it inconsistent with the non-adversarial nature of the proceedings. Mr. Howlett has likewise failed to raise a genuine constitutional issue with respect to the favorable Social Security determination. Mr. Howlett appears to contend that because he was granted the favorable determination, that that somehow means that he is entitled to a finding of service connection with respect to depression or with hyperacusis. But that, again, is a factual issue. And Mr. Howlett also has not raised a genuine issue with respect to the failure of the VA to obtain the transcript related to the 2006 determination. Mr. Howlett raised that issue in his brief, but that argument, again, is constitutional in name only and is substantively just an argument that the VA failed in its duty to assist. Regardless of how it's characterized, though, the argument is without merit. As a threshold matter, Mr. Howlett fails to raise the issue of this document or identify it as missing either before the Board or the Veterans Court and should not be permitted to raise it for the first time on appeal. Mr. Howlett's failure to raise this issue below not only relates to the issue of waiver, but it also undermines his alleged allegation that the VA failed in its – comply with its duty to assist constitutes a due process violation. As this Court has recently explained in Guillory v. DVA, in distinguishing that case from the Court's decision in Cushman, there is no due process issue where the statutes and the regulations provide an adequate remedy. Here, Mr. Howlett is not alleging that the due process – that the process was inadequate or that he was not afforded the opportunity to raise the fact that he believes that this document was – should have been included. He simply failed to do so. As the Board noted, Mr. Howlett actively participated in this process and could have raised the argument that this document was missing either before the Board or before the Veterans Court. He simply did not do so. Even if it were – even if the Court were to consider this as presenting an issue within the Court's jurisdiction, Mr. Howlett's claim still fails because he hasn't demonstrated that he was prejudiced by the failure for the VA to obtain that Social Security transcript. Finally, for the first time in Mr. Howlett's reply brief, he asserts the apparent challenge that the VA examiners – an apparent challenge to the VA examiners' competency based upon citation to medical literature that was not presented before the Board. As this Court has stated in Sickles, if a veteran wants to challenge the competency or the qualifications of a medical examination, it is incumbent upon the veteran to raise that issue before the Board. Here, Mr. Howlett failed to raise the issue before the Board. He failed to raise the issue before the Veterans Court, and he likewise failed to raise the issue in his opening brief. He should not be permitted to raise it in his reply brief only. Accordingly, we respectfully request that the Court dismiss Mr. Howlett's appeal for lack of jurisdiction because he has failed to adequately raise an issue of genuine constitutional or legal concern. Alternatively, if the Court were to conclude that it does possess jurisdiction, we respectfully ask that the Court affirm the Veterans Court decision because the Veterans Court correctly determined that the Board made a permissible credibility determination that demonstrated a thorough review and discussion of the record, including an explanation as to why it rejected specific favorable evidence. I have a suggestion for you, just a general suggestion. In the future, I wouldn't read my oral argument. Yes, Your Honor. Erwin Griswold used to do that, but he was sort of unique. Thank you, Your Honor. Thank you very much. Mr. Walsh, any comments? The only comment I will make, we did make a comment about the conduct of the examiner. I think Mr. Howlett will probably take that up with the estate licensing authority. I thought that conduct was pretty egregious as a former VA hospital counsel. I would have not been happy had that matter been brought before me. However, that's the agency's job to supervise their examiners. But here it's had a dramatic and draconian impact on this Veteran's life. I will say that Mr. Howlett and his wife were on this matter pro se. I thought they did a pretty good job of coming to terms and understanding their disability and having the record be pretty competent. If I have not persuaded the court and argued this thing effectively, I apologize to Mr. Howlett and the other Veterans. But I see this credibility issue and the position taken by the court below to be pretty ominous. I think it's basically saying this is a get-out-of-jail-free card. All you have to do is raise a credibility determination, and then you can short-circuit the entire process and you don't have to adequately weigh and evaluate this evidence. I think that will be a sad day for our Veterans. Thank you very much. All right. Mr. Walsh, Ms. McNamara, thank you both. The case is submitted.